This court should reverse Mr. Short's convictions for importing and distributing cocaine because the evidence was simply insufficient to establish that Mr. Short knew there were narcotics in Trinidad to the United States. The only direct evidence of his knowledge of narcotics was an agent's testimony at trial about how the agent asked Mr. Short after he was stopped at the airport if he knew what type of drugs he was under arrest for and he, quote, responded cocaine. But Mr. Short made that statement only after watching an officer in close quarters find the cocaine hidden and sealed in a suitcase and pull out long, thin packages of it. The white powdery substance and the officer told Mr. Short that he was under arrest for narcotics before Mr. Short made any statement. And in fact, Mr. Short explained to the agent in a recording that the jury did not get to hear because of an erroneous evidentiary ruling that I'll turn to in a moment, that Mr. Short had checked the suitcase and found it clean and had learned about the drugs only from the agents themselves after he was stopped. I'm sorry, let me interrupt you for a second to interject the question. Why isn't it evidence that one knows one is transporting a drug when the drug is in one suitcase? You act as if your arguments seem to assume that that's not a basis for an inference of knowledge. I would think that the fact that somebody has cocaine in one's pocket or in one's suitcase is itself evidence of awareness that one has drugs. Why is that not the case? Yes, Your Honor. Let me say a few words about that. And certainly the government suggests in its brief that the exclusive possession of what the government calls a drug-laden suitcase alone can give rise to an inference of knowledge, as the court's question suggests. But that's not what this court's cases say. In fact, they say that it's a hugely fact-dependent inquiry where you have to look at all of the facts to see if the defendant is truly a trusted courier who can be charged with knowledge of what's in a bag or a package or a car, or if the defendant is a mere patsy, someone who does not have knowledge. And in the cases that this court has decided, and you have cases in our brief, and there are cases on both sides, but in the cases, the records where this court has affirmed convictions and found evidence sufficient have far more circumstantial evidence pointing at a defendant's knowledge than you have here. In Anderson, for example, this court found the evidence sufficient where the defendant claimed not to know about drugs in a bag that he was poised to receive. Yes, but do you have cases where the court found the evidence insufficient, legally insufficient, when the defendant had cocaine in his bag that he was bringing through Customs? You're saying that the evidence was sufficient in cases that have a lot more evidence. That doesn't really tell us very much. Of course, Your Honor. The closest analogy is this court's decision in U.S. v. Torres. And in that case, the defendant received a package that was filled with drugs. It was addressed to him. There were communications between him and the senders of the package before it got sent. He acted suspiciously at the time he received the package. There was a fair amount of suspicious behavior at the time of its receipt. And this court said in its opinion that there's certainly enough evidence to show that the defendant knew there was something illicit in the package. But the court said there was not enough to prove that that defendant knew there were drugs specifically in the package. And the court's ruling was based in part on the fact that in that case, and the court wrote this, that there were no cooperating witnesses who testified in that case about a drug organization. The drugs were well-concealed in the package, like they were well-concealed in Mr. Short's suitcase. But that's a case where the packet was not brought in by the defendant. It was sent to him by somebody from someplace else. This is a case where the defendant brought the suitcase himself from outside the country into the country. I think the defendant's transportation of the package here, and the defendant in Torres would have been transporting the package there, and he was up until the point where he stopped. I don't think that that distinguishes it because the fact that Mr. Short has the suitcase with him for a slightly longer period of time doesn't give rise to a greater inference of knowledge, particularly where the evidence in Torres suggestive of illicit activity was more extensive than in this case. And the things that this court said were absent in Torres are absent here as well. There was a much higher value of drugs in that case. For example, a million dollars worth of drugs, which is at least quadruple the value here. And the government in that case, like here, said that someone like Torres wouldn't have been entrusted with that if he didn't know what was in the package. The text messages there or the suspicious behavior was far more extensive here, where at worst, Mr. Short simply acted nervous at the time he got stopped by the agent. And on the whole, I think the evidence was less circumstantial evidence than even this court found insufficient in the Torres case. And to compare that to Anderson again, where the court found sufficient evidence, Anderson had much more, but even that resulted in a divided opinion with one member of this court dissenting and saying that that evidence, which was more extensive than ours here, was insufficient to establish the defendant's knowledge. And I'm happy to answer additional questions from the court, but I want to turn for a moment to the completeness and expert issues. At a minimum, this court should order a new trial due to evidentiary, or each of which independently requires a new trial. First, the district court abused its discretion in precluding Mr. Short from introducing the additional exculpatory statements he made to agents at the time of his so-called admission. The admitted statement alone, acknowledging that he was under arrest for cocaine, was incomplete and misleading and not harmless. In addition to responding cocaine when he was asked if he knew what type of drug he was transporting, Mr. Short also said he checked the bag to see that it was clean and first realized there were drugs in there when he learned it from the agent. These statements were part and parcel of the admitted statement. The admitted statement has the agent asking him if he knows what type of drugs he's arrested for. The natural next question is, how do you know that? And the district court precluded the answer to that natural next question from coming into evidence. You can't say it's highly probable that that did not affect the verdict. And finally, the district court committed a manifest error by admitting expert testimony of an investigator Hernandez over a defense objection, where that expert covered numerous things well within the understanding of an average juror, like how couriers use boats and planes and phones and text and WhatsApp. The expert prejudicially suggested that Mr. Short was part of a large scale trafficking operation, where there was a complete absence of evidence of anything like that here. The expert improperly said bugs don't need to be tested for DNA when you have someone in custody, defending the government's investigatory methods in a way that the government and its brief doesn't even defend. And worst of all, said that it's highly unlikely for a courier to be blind. And he'd never seen that in his career. He'd never seen a courier not know about the drugs he's bringing in. Of course, this court in Anderson and footnotes 14 and 15 acknowledged the use of unwitting couriers by drug trafficking organizations. But worse, the AUSA here referred to investigator Hernandez's testimony again and again and again, in the main and rebuttal summation, including the testimony on this ultimate issue, whether a courier may not know what's in a bag, it was error to admit that testimony. And that alone, it cannot be said that it did not substantially influence the jury. I'm happy to take any questions. Judge LaValle, any questions? Nothing further. Thank you. Judge Raji? Yes, I do have a question or two. Counsel, I want to focus on your sufficiency argument in which you characterize the evidence about your client saying that the suitcase contained cocaine. It seems to me you're asking us to view that evidence in the light most favorable to your client. But we're obliged to view the evidence in the light most favorable to the jury verdict, which would mean that we would have to assume that the jury did not credit the account of seeing the opening of the drugs, etc. When we view the evidence in the light most favorable to the jury verdict, why isn't it sufficient? Yes, Your Honor. And of course, on a sufficiency challenge, the court views the evidence in the light most favorable to the government. Here, the testimony about the circumstances in which Mr. Short made the statement is essentially undisputed, that the agent took out the drugs and told them he was under arrest for narcotics. All of that is in the government's brief. It was the testimony of a government agent. So those circumstances are not in dispute. And I'm sorry, but I was under the impression that the government's witnesses were that that happened. That was not within the eyesight of the defendant, or at least at a considerable distance from it. I don't believe that's accurate, Your Honor. And of course, my well, the government will will tell us their position. I, I believe it's undisputed. You're saying it's undisputed that he saw the drugs tested? I don't know about tested, Your Honor. On that particular point, the record is slightly unclear. Certainly he sees the four bags removed, the four packages of cocaine removed from the suit. Well, but they weren't labeled cocaine. You're arguing that he did not realize that this was cocaine, because the government is relying on the fact that he's asked what's in there and he says cocaine. So I just need to be sure I the agent's actions. Oh, I don't mean to say that that piece is undisputed. I think the government certainly views that. What I How is it that the evidence looked at most favorably to the government doesn't have your client being the one who who says that what it is is cocaine? Your Honor, in the context of what happened, what I believe is undisputed is that he sees the packages removed from the suitcase. He hears the officer say he found a white powdery substance and then he hears the officer tell him he's under arrest for narcotics at a minimum. Then there's the additional statement he makes that he learned about it, that it was cocaine from the officers and that he heard them talking about cokie, which is something no agent said they didn't say. Against that backdrop, there is a complete absence of evidence of anything that would give rise to Mr. Schwartz that there's cocaine in the bag. Prior to that moment, he's arrested. And although inferences need to be drawn in the right light, most favorable for the government, they also need to be reasonable. And the only reasonable inference here is that Mr. Schwartz watched what was happening with the agent. And when he was asked, what type of drugs are you under arrest for? He gave the sensible response, cocaine. There's no basis to say he knew cocaine, that it was cocaine at some point prior to watching all of this with the agent. None of the government's other evidence speaks to that. And so while, you know, juries, you have to draw the inference in the light most favorable to the government. The only reasonable inference here, the only supported inference, the inference is supported by what happened with the agent by Mr. Schwartz, other statements that are recorded. And in the record here, the only supported inference is that he learned about it from the agent. And that's all that that statement stand for. All right, thank you for clarifying your position. I have nothing. I have an additional question, which is just following on what you were just saying. Why isn't the combination of circumstances, the combination of his having the these, these packets concealed in his suitcase, and the suspicious behavior, including starting with the fact that his companion apparently refused to roll that bag herself, and he had to take it. And then when he was stopped at the customs, with a problem with his suitcase, his, his companion, and he pretended they didn't know each other. And they didn't even look in each other's direction. And she walked away without him. Why isn't that by itself enough to substantiate to create sufficient evidence of his knowledge of the, of that he was carrying cocaine in his suitcase? Yes, Your Honor, just like in Torres, which featured similar suspicious behavior at the time when law enforcement was involved, this court said, the evidence is sufficient to say he knew he was involved in something illicit. And at the time that Mr. Short is stopped, I mean, of course, he's nervous, he's stopped by law enforcement. But in the light most favorable to the government, yes, there's sufficient evidence that at that point, he knows there's possibly something illicit. There's a complete absence of evidence that he knows he's involved with drugs. And the fact that he says cocaine in response to questioning at the time he did, after witnessing what he witnessed, doesn't take this evidence across the line from insufficient to sufficient. The cases where this court has affirmed contain much more extensive records than present here. It is at least equally consistent, the record here, with someone transporting a suitcase into the country, not knowing, you know, what it contains and learning about the Thank you. Thank you, Judge. All right, we'll hear from Ms. Farrell. Thank you, Your Honor. May it please the court. My name is Megan Farrell, and I represent the government in this appeal. I also represented the government below. This court should affirm the defendant's conviction, which was supported by more than sufficient discretion when it included evidence regarding the defendant's false exculpatory statement, because the statement that the defendant now claims should have been admitted did not explain or complete the statement admitted by the government. And finally, the district court did not commit reversible error when it admitted expert testimony regarding the role of a courier in a drug trafficking organization. To the extent that the defendant now challenges any statements by the expert regarding a so-called blind courier, he has waived this challenge by eliciting such statements himself on cross-examination. Turning to the defendant's primary argument regarding the sufficiency of the evidence, this court should reject the defendant's invitation to usurp the role of the jury and substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury. Here, the defendant claims that various pieces of evidence admitted at the trial can be viewed in a light that supports either guilt or innocence, and that in such a case where much of the evidence is the defendant mischaracterizes and misapplies the relevant standards. In fact, this court has repeatedly held that after viewing the evidence in the light most favorable to the government, it will only reverse a jury's determination if the evidence is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt. Here, there was indeed sufficient evidence, and the amount and type was Specifically, the government cites Fagan, where this court affirmed a judgment of conviction, and there the defendant's suitcase had approximately three kilos of cocaine, and the drugs were concealed in the false bottom of the suitcase. The defendant, much like the defendant here, said that the suitcase and everything inside of it was his own when he was in costumes. The defendant there appeared nervous and wasn't able to answer basic questions. This court found that the combination of circumstances, the nervousness, the false statement, the evidence was sufficient to support an inference that the defendant knew that there were drugs in the hidden compartment. Here, the facts are very similar, except there's even more evidence. The defendant had sole possession of his suitcase, and that distinguishes this case from Torres, where there were a variety of individuals involved, and there really was no prospect of the defendant ever having sole possession. Also here, the defendant told the customs agent when he was stopped that the bag and everything inside was his, only to change his story later and say that he was bringing the bag for a friend. The defendant also lied to the customs agent when he said that he was traveling alone. The evidence clearly established that the defendant had flown to the United States with his girlfriend, they sat next to each other on the plane, they walked through the airport together, they went to the baggage claim together, and it was only once he was intercepted by law enforcement that he pretended he was no longer with someone else. There's also additional behavior by the defendant from which the jury could have concluded that he had knowledge of what was in the suitcase. His girlfriend, as the court correctly pointed out, walked right past him as he was having his suitcase searched. She didn't wave at him, he didn't wave at her. Instead, they pretended that they didn't know each other. A reasonable fact finder could have determined based on this evidence that the defendant knew that the CBP officer was close to finding the cocaine hidden in his bag, and that he didn't want to get his girlfriend involved. Relatedly, there is evidence at trial of the defendant's girlfriend in the airport, from which a jury could have found guilt. And that is the fact that when he was picking his bag up at the baggage claim, his girlfriend initially grabbed his bag. There's no volume on the video, but he gestures towards her and they switch bags. He goes out of his way to maintain possession of the bag. This sole custody is a fact that this court has repeatedly looked at when considering whether or not it's as the evidence showed at trial. There was also evidence that has not even been discussed yet of the defendant's communications with the individual for whom he was carrying a bag. Those communications are also evidence of guilt because they were inconsistent with the supposed relationship the defendant had with this individual. They hadn't really communicated much in the prior year, and yet they were in extensive contact prior to the defendant's trip to Trinidad. And they were in contact while the defendant was in Trinidad. This individual, sick, wanted a picture of the defendant before he left for Trinidad. There was evidence in the phone that they had met up, that the defendant could pick up a suitcase before he left for Trinidad. And most importantly, on the day that the defendant left Trinidad to come to the United States, this was all circumstantial evidence of the defendant's knowledge and guilty mind. This court has repeatedly held that circumstantial evidence is sufficient. There is no requirement of direct evidence, although here there was direct evidence. There is the defendant's statement that there was cocaine in the bag. But even without that, the government's position is that there was sufficient evidence for the jury to conclude that the defendant was guiltily considered in reaching its verdict, as it was entitled to do. The jury here could have easily concluded that the defendant, who claimed to have checked his bag thoroughly, and yet didn't notice that there was glue on the zippers on the interior of his bag, was not being truthful. The jury could have viewed that testimony and considered that the inconsistent and implausible nature of the testimony pointed towards guilt. I want to turn to address counsel's arguments about the statement of cocaine. Here, the defendant is now arguing that the admission was just confirmation of what he already heard from the officers that arrested him. In terms of interpreting that admission, it should be in the context of the time of the defendant's post-arrest statement. Here, counsel is alleging that the statements that were excluded by the district court were part and parcel or necessary to understand and should have been included under the rule of completeness. But the defendant's defense at trial, that he knew that there was cocaine in his bag because he was told that there was cocaine in his bag, was not something that he said in his post-arrest statement. This is a ruling on evidence that the district court made, and it did not abuse its discretion in determining that these false exculpatory statements were not to be admitted. The defendant is trying to create an ambiguity that doesn't exist. This was the defendant's argument at trial. It was not what he said in his post-arrest statement. In fact, in his post-arrest statement, he was asked by the agent whether or not anyone ever said that there was cocaine while he was in jail. And that was evidence that the government actually admitted in its rebuttal case because it was directly contrary to what the defendant had previously said. Moving on to the defendant's third argument, the admission of testimony by a drug trafficking expert was a ruling that was made within the court. The expert did testify about drug trafficking organizations, and that testimony was appropriate because it related to the topics that had been previously discussed by the court, specifically the role of a courier in a drug trafficking organization, the use of couriers, methods of importing and testifying about how drugs are valued and sold. It was necessary for the expert to discuss drug trafficking organizations. This testimony enabled the juror to assess whether or not the defendant's practices were consistent or inconsistent with drug traffickers. And the drug trafficking expert did not about the concept of a blind courier, which he in fact admitted did exist. That testimony was elicited repeatedly in questions by defense counsel, which defense counsel came back to more than once, and it was defense counsel that actually used the term blind courier. So to the extent that the defendant now complains that this I would now be happy to take any questions from the court. I'm a little troubled by the last aspect of your argument. It's my impression when you say that it was the defendant who elicited the agent's testimony that it would be a fair characterization. It seemed to me that the agent went far beyond the scope of the question and kind of like it was kind of like a concealed explosive device that that he asked him whether it is possible for one to for a courier not to know what the courier is carrying. And the agent then volunteered going well beyond the scope of the question that it would be highly unusual for a drug organization to use to use one. I don't see why that was appropriate testimony. I think I have grave doubts as to whether that would be appropriate if it had been elicited by the government. And I don't really see that it was elicited by the defendant since the since the agent went far beyond the question that he was asked. He wasn't asked about whether it would be usual or customary for for drugs to send for drug organizations to send drugs with a blind blind courier. He was just asked whether it can happen. I would agree that had it been elicited by the government, it would not have been proper. And why is it different? Why is it different if the agent then laid back and and went far beyond the scope of the question that he was asked to bring? Why is that any different when it comes when the agent volunteers it essentially than when the government elicits it? Your Honor, I would submit that initially the agent did not go or the investigator did not go far beyond the defense counsel asked if it was proper and he said highly unlikely. And then she continued to ask additional questions about it and I would submit the counsel did this in its own judgment as a strategy at trial to try and fit the defendant within the category of people that don't know. And so to the extent that she continued to revisit the issue and raise the issue to try to establish through the expert that the defendant was in a category of people that don't know versus the category of people that do know the government would submit that that that was a strategy that was employed by defense counsel. Yes, but after the agent has gone beyond the scope of the question and introduced the notion of it would be highly unusual, then the damage has been done and counsel has to cope with it in whatever way counsel can. What precisely was the question that elicited the answer highly unusual? Your Honor, I can just pull it up right here. I believe the question was a person can be used to transport even if they don't know. This is on page 778 of the appendix, this appendix 3 I believe. The question was a person can be used to transporting even if they don't know. I've heard that but it's highly unlikely is what the expert said. And then the second question was but there's even a term for it. There's called a blind courier and the expert said yes. And then the lawyer said you've heard of that term before. And the agent said yes, I have. And then she went further. She said so you're familiar with it, that it exists, that people could be used to transport drugs and not even know it. And he answered I know that it exists. Yes. And so I think in the broader context, the lawyer continued to engage and she actually got answers that were exactly what she wanted. Yes, in fact, it exists. And so, you know, again, Your Honor, the government would submit that that was a judgment that was made for strategy and that the government did not elicit that on direct examination. At bottom, at the very end, this expert never said anything about this defendant. This expert was clear about what it had reviewed in advance of trial and never came to an opinion as to whether this defendant knew. And so here, although they are questions that the government should not and did not ask on direct examination, you know, the defendant has waived this by exploring this with the expert, you know, for his own potential advantage. Judge Raji, any questions? Yes, please. Perhaps because I was having a little trouble understanding you, Ms. Farrell, I would like you just to respond to Mr. Jacob's point that the evidence of the events occurring before the defendant's statement that the what he was carrying in his hand, what he was carrying was cocaine, would only admit an inference that he learned that at the time of the government's seizure. Do you want to tell me why the government does not accept that argument? Yes, Your Honor, I think that those are facts that were really proper for the jury to come to their own conclusion as to what they could infer. But what would have allowed them to reject that conclusion? Because counsel's suggesting that the only reasonable inference was that he learned the substance, what the substance was at the time of the seizure. What facts would have allowed them to reject that? Your Honor, there is a few facts. So it could be the credibility of the witnesses, the defendant's testimony and the agent's testimony, but also the video evidence that was admitted during the trial showed that the defendant was standing in front of his bag when the clothes were removed and when it was searched. And then the agent walked away to a different area to X-ray the bag and then brought the bag back. And there were officers standing around and the defendant and that video. Correct, Your Honor. But there's no audio for the video. And so what was said during those exchanges is based on testimony. The CBP officer testified that either in that area that I was just describing in customs and also in the pat-down room that he never ever used the word cocaine, that he told the defendant ultimately that he was under arrest for narcotics but that no one ever used the word cocaine. Similarly, the defendant testified that somebody said the word cokie, but essentially admitted that that was never something that he said in his post-arrest statement. As Your Honor pointed out earlier, when the packages were removed from the suitcase, the evidence showed that the packages were wrapped in like a black material. And so it wasn't as if they were translucent bags filled with white powder. And so here, the fact that the defendant knew that it was cocaine or said that he had been under arrest for cocaine when no one had told him that, Your Honor, the fact is that the jury could infer from that that the only way he knew that was because he knew it was in the suitcase. And the fact that he said cocaine as opposed to any other narcotic or any other white substance... No, I understand what you're saying. Thank you. Thank you. That's all I have, Judge Kipronos. Judge LaValle, anything more of Ms. Farrell? I'm just curious, why wasn't testimony elicited by the government denying the use of cokie? Your Honor, that came up first in the defendant's own testimony. Yes, but the government then had further opportunity to rebut it by not just denying that the word cocaine was used, but denying that the word cokie was used in his presence. Your Honor, on rebuttal, the government did admit evidence that the defendant denied the word cocaine had been used and argued that it was essentially the same thing. I mean, the defendant was asked in his post-arrest statement, the agent said to the effect, I want to find out if anybody ever used the word cocaine, did anyone ever tell you it was cocaine? And in the video, the excerpt of which the government played during rebuttal, the defendant nodded affirmatively, shaking his head back and forth, no, no, no, that wasn't it, that wasn't it, that wasn't the word. And so, you know, the government would submit and did to the jury that, you know, he didn't say, oh, they said cokie, not cocaine, you know, that in effect that that evidence did rebut the defendant's testimony about the word cokie. I see. Thank you. All right, Mr. Jacobs, you've reserved two minutes. Yes, Your Honor, just briefly, I'll hit a couple points. First, on the issue you're covering, Ms. Farrell has said a couple times that Mr. Short didn't say in his post-arrest statement that he heard about the drugs from the agents, but that's not accurate. On Appendix 133, which is a transcript of the recording, Mr. Short states to Special Agent Futter and Luckin, I first realized there was drugs in the suitcase after when they come and say I'm under arrest, the drug in the suitcase. He clearly says, and it's consistent with what's happened, that he realizes about the drugs in the suitcase after his arrest. It is in the post-arrest statement, contrary to what Ms. Farrell said earlier. On the issue of the expert, Ms. Farrell acknowledges that it would have been improper if the government had elicited this testimony. And yet, despite that acknowledgement, repeatedly in summation, Ms. Farrell emphasized this testimony. On Appendix 1005, in the main summation, she tells the jury, like Special Investigator Hernandez told you on cross when he was pressed and pressed and pressed about blind couriers, people who apparently don't know they're transporting drugs, he has never seen it happen. And then again, in the rebuttal summation, on 1066 of the appendix, she tells the jury, and recall Special Investigator Hernandez' testimony about the situation where he didn't believe it was possible that there would be an unknowing courier. The government relied heavily on this admittedly improper testimony. And of course, I agree with your Honor's assessment that the defense counsel's question did not fairly call for this. It simply asked for a simple acknowledgement that it's possible a courier would not know they're transporting drugs. And the agent went far beyond it, saying it's highly unlikely, and then repeatedly went back to that testimony in the back and forth with defense counsel. And then finally, Ms. Farrell, in searching for a case to respond to the court's questions that supports the idea that the evidence is sufficient here, relies on this court's decision in Fagan, F-A-G-A-N, which she also discusses in her brief and which we discuss in our reply brief. That's a non-precedential summary order and it's roundly distinguishable. We address it in our brief, but in that case, the defendant packed the bag himself. He couldn't say where he was going. He couldn't give contact information for the people he was seeing. As the agents were about to remove the drugs, he turns around because he doesn't want to watch. It's totally different and it's not a binding precedent anyway in the way that Torres and the entire line of cases that Torres follows is, and that we've said in our brief. And I'll just repeat again that the government does not even address Torres, despite us discussing it at length in our opening brief and again in this very argument. Unless the court has any other questions, we'll rest on our papers. Thank you. Nothing more. Thank you. Okay. Thanks very much. We'll reserve this.